Good morning, good afternoon, Your Honor. My name is Steven Sugarman. I'm from the law firm of Beeland Sugarman in Santa Fe, New Mexico. I'm here this morning on behalf of Plaintiff's Appellants, American Bird Conservancy, Forest Conservation Council, and Conservation Council for Hawaii, who I'll refer to collectively this morning as ABC. And I come this morning with passion and case law. Your Honors, I would like to reserve about six minutes or so for rebuttal. You may certainly do so, but watch the clock. I'll watch the clock. May it please the Court, this case is a citizen suit under the Endangered Species Act in which ABC seeks to enforce the mandatory requirements of the Act. Specifically, with this lawsuit, ABC challenges the FCC's failure to consult with the Fish and Wildlife Service, the Acknowledged Expert Agency, as to the effects that seven specifically identified communications towers have on two listed migratory bird species that are present here in Hawaii. So your suit is brought under 1540 G. That's correct, Your Honor. We brought our suit. We commenced our suit under the citizen suit jurisdictional provision of the ESA 1540. And a specific remedy you seek? We seek, there is only one remedy that's made available, and the specific remedy that we seek is we seek an order compelling the FCC to consult with the Expert Agency, the Fish and Wildlife Service, as to the nature of the effects. Is there a mootness issue here? Hasn't all of this, the towers are up and there's not more to do, is there? No, there's no mootness issue here at all. A Section 782 claim remains alive, a Section 782 claim like ours, in which we are alleging that the action agency, the FCC in this case, failed to undertake its obligations to consult with Section 782. That action remains alive until the consultation that's specifically required by the Act is completed. That has not been completed in this case. What is your action in the District of Columbia seeking? In the District of Columbia, as the Court knows, the District of Columbia is a very interesting case, and it's an important case for this Court to be aware of how that Court, how that case played out insofar as a resolution of this case is concerned. In that case, what happened is that the ABC filed a petition alleging violations of ESA and other statutes, the National Environmental Policy Act and the Migratory Bird Treaty Act. That petition was filed pursuant to FCC regulations. So there you candidly admit you are challenging the FCC regulations, unlike what you're claiming in this case, right? In that case, there are challenges to the FCC regulations. I'd like to say the FCC rule specifically contemplates challenges under NEPA. The rule is a NEPA rule, 1.1307. The rule does not speak at all with respect to ESA. So that petition was filed by ABC in August of 2002. What happened then is a procedural purgatory, and in fact, the merits of that ESA claim were only heard by the D.C. Circuit on September 11th of this year. That's more than five years after the FCC, or I'm sorry, after ABC. Well, does that mean the FCC issued a final order in that case then? That's correct. We were lucky in that case because the FCC in that case denied ABC's petition. In that case, what the FCC said in that case, and I provided excerpts of the decision to the court, it's FCC docket number 0644. Critically, in that case, what the FCC held in responding to the ABC's petition was that the Fish and Wildlife Service in that case had not specifically found that there was a likelihood of adverse effects with respect to the species at issue. In the Gulf Coast petition, they said any time the Fish and Wildlife Service finds that there may be an adverse effect, formal consultation is required. Did you try to supplement that record in this latest letter? The later that I was hoping, Your Honor, that you had received the letter because I actually did send a Rule 28... Did you try to supplement the record in the D.C. Circuit? With the letter here in... No, Your Honor, that has not been done. So you don't have a decision from the Court of Appeals in that case? No, there is not a decision with respect to the Court of Appeals in that case, but I don't believe that the decision of the Court of Appeals... But you filed a petition for review, did you not? We did. In the D.C. Circuit with respect to the FCC action or not? We're talking about the Gulf Coast petition, Judge O'Scanlan, because in the case of the Gulf Coast petition, which Judge Smith was asking about, yes, we started out on this procedural path pursuant to the mechanism that the FCC has proposed. Although we don't feel that it's required, we wanted to... This was the first time that a petition had been filed and we wanted to give the FCC a fair chance to give us a fair shot on our petition, but five and a half years... It took five and a half years when it enacted the Endangered Species Act. Now, getting back to this case, you asked for several kinds of relief, and when somebody asked you earlier here, you only mentioned one, but you want to enjoin the FCC, right? No, Your Honor, that's... That's what the Burr says. Enjoin the FCC from delegating their responsibilities on to the ESA? We do not seek that relief. For purposes of this case, Judge Tashima, we accept... That's what the complaint says. The complaint was... What the Court needs to do is it needs to read the prayer for relief along with the causes of action. The causes of specifically identified communications... Aren't you challenging the delegation? No. In this case, we are not. You're not. And we do not... So what are you challenging? You're only challenging the failure to consult? We are challenging... We are only challenging the FCC's failure to consult with respect to these seven towers. All right. Now, you did file the 28J letter in our case, right? Yes. Now, if the FCC, pursuant to the suggestion of the Fish and Wildlife Service, if the FCC does decide to consult, would that moot this case? If that... No, because as I just stated in response to Judge O'Scanlan's question, there is no mootness until the consultation is completed, formally. Isn't that all you can ask for? No. And then your only other remedy is at the end of the consultation, right? If the Fish and Wildlife Service recommends it and the FCC doesn't follow. And before then, I mean, it's premature. Well, to answer both of your questions, Judge Tashima, there is no mootness issue under... There's no mootness issue until the your question... And a biological opinion is issued. Your question was whether FCC's decision to comply with the Fish and Wildlife Service's request for consultation, whether that in and of itself would moot the action. It would not. It's the issuance of the biological opinion that moots the action. Well, counsel, let's get to the real issue in this case, since we're into it now. And that is that the district court held it had no jurisdiction with respect to an ESA consultation 782 claim as against this particular defendant, named the FCC, for the reason that... And here's where you have to help us and graph the APA. The FCC is subject to the APA for the reason that there was no action or no final order out of the FCC, which would give jurisdiction. Is that... Am I stating this correctly or not? I don't believe that that... The district court actually went off on a tangent in resolving this challenging the... That this case constitutes a facial challenge to the FCC's regulations, policies, and practices with respect to ESA compliance. I thought it was that, you know, no, you're challenging the orders approving these towers. That is not correct, Your Honor. Let me tell you why that's not the case. Let's look at the opinion of the district court. The reason that that's not the case is because if we prevail in this case, and we believe that we should, obviously, what will happen is that the FCC and the expert agency, the Fish and Wildlife Service, will have a consultation. First, you have to get jurisdiction over the FCC. What is the jurisdictional basis that you can offer us here? I just want... I guess I'm running in different directions. I was responding to Judge Hashima. I'll get to you right now. I'll get to you. We're all talking about the same jurisdiction. Here is the jurisdictional basis of this case. The jurisdictional basis of this case is the citizen supervision, Section 1540. This case, this court in Wilson v. Bellow, said that the proper inquiry in a case like this, where the court is addressing whether or not a claim falls within the scope of Section 402, is whether there's a final agency, action, or order within the scope of 402 that the court is being asked to review, and then secondly, whether or not an order in favor of the petitioner or the plaintiff would require the court to annul, suspend, or invalidate the regulation. But why wouldn't the permits, so that you admit that there were permits issued for these seven towers, why are those not final orders, those licenses? Why aren't they orders of the commission? Those are not final orders. First of all, that is not an issue that we've had to join. The failure to act is not a final order with respect to whether or not the registration orders are in order. Those are final orders. Just a minute. This is not a failure to act case. Oh yes, Your Honor. This is a failure to consult case under the Endangered Species Act. In which case, you have to establish that you have jurisdiction in the federal district court against a federal agency which has an enormous defense mechanism against being sued willy-nilly. There are very, very limited opportunities which Congress has granted to make the FCC amenable to sue. You have to show us why the exclusive remedy isn't judicial review to the Court of Appeals rather than a right of action in the district court. Your Honor, that issue has been addressed. In fact, the leading case in this issue is FCC versus ITT. In that particular case, the plaintiffs pled three causes of action. They pled a cause of action under the Freedom of Information Act, a cause of action under the Sunshine Act, and a cause of action alleging an ultraviolet regulation of the FCC. In that case, the Supreme Court found that only the third of those three challenges, the challenge to the FCC rulemaking, was within Section 402. The Freedom of Information Act was not within Section 402. The Freedom of Information Act claim, the Sunshine Act claim, was not within Section 402. There are other cases in which courts have held that there are claims against the FCC that are not justiciable under Section 402. I know, but those aren't cases specifically having to do with an action of the FCC issuing an order approving something it has by law the authority to approve. Yes, but Your Honor, remember, it's not just whether or not there's an order. The question is, is there an order that's reviewable under Section 402? For there to be an order reviewable under Section 402, there have to be three things present. That's what Judge Smith asked you a long time ago. I mean, isn't there an order here? Remember, action and case law. And here's the case law. The case law says there must be agency expertise. There must be an administrative record that is created in the exercise of the agency's expertise. Well, there are cases that have found final orders without a record. Your Honor, under the APA? Yes. Yes, but that's not the inquiry here. The question is, is this a final action within Section 402? And to be a final action specifically within Section 402, the action has to be taken in the exercise of the agency's expertise. It has to implicate the agency's substantive duties under the Act which authorizes it to act, in this case, the Communications Act. And there has to be an administrative record that the expert agency, in the first instance, for the appellate court to review. None of those indicia of an order reviewable under the Communications Act are present in this case. Counsel, I compliment you on your ingenious plea. I really do. And I empathize with you about what Congress did. But we're bound by the law that Congress enacted. And I'm still puzzled as to we get jurisdiction of this under the Hobbs Act. Because any way you look at it, you've got seven towers that have been up now for, I gather, some time. Each of them have a license which, at least under some case law, suggests that which becomes final without a challenge is an order of the FCC. And yet here, it seems to me that what you're doing, and again, I compliment you on the you're coming at this two different ways. The DC suit, which is a direct facial challenge, this is an indirect challenge which, if you're successful, would get the same result. That's not correct. We are not seeking any relief with respect to the regulations. The only relief that we're requesting is an order compelling a consultation between the FCC and the expert agency. No, but the relief, obviously, closely related to that is if the consultation results in a certain opinion, then something has to be done to amend the license. That's incorrect, Your Honor. That's correct. It's correct that it's incorrect. Once the biological opinion is issued, it's up to the FCC to determine whether and how to comply with the biological opinion. It's very hypothetical that any action at all will be required with respect to these specific towers. But counsel, with respect, isn't that metaphysical? I mean, really, it seems what you're doing here is asking the FCC in some mysterious way to review what it's already done. And if it does what you're asking it to do, it's going to have to change its delegation regulation, or it's right back in the same spot that it would be when you started this lawsuit. No, Your Honor, this suit would not implicate in any way, shape, or form the delegation regulation. Even if we were to prevail in this lawsuit, what would happen is that the FCC would consult with the Fish and Wildlife Service. And do what? What's the result? The towers are up. The result is that there would be a consultation. This is a critically important mechanism that was created by Congress in enacting the ESA. And I respect that. I respect that. But I'm just saying, these towers are up. They are fully licensed. You claim in your pleadings you didn't challenge them. That's why I think Judge O'Scanlan's standing issue is kind of interesting in this context. You're not an aggrieved party, are you? The public doesn't learn. They have a very arcane licensing procedure. The public doesn't learn that an application has been submitted until the application has been approved. Listen, I empathize. Your Honor, I'm sure Congress did some really unusual things here. Let me tell you the case law that will lead the court to ruling on my client's behalf in this case. It's Washington Toxics case and the Turtle Island case. And the Washington Toxics case, which I know Judge Tashima is familiar with, the EPA alleged that the exclusive review provisions of FIFRA preempted the jurisdictional provisions and the remedies of the ESA. This court disagreed. It found that the purposes of FIFRA and the ESA were separate but complementary. And what the district court, what the appellate court did in that case is it said, yes, despite the fact that there's a statute under FIFRA that vests initial review in the Court of Appeals for pesticide registrations, this case, because it's an ESA case, failure to act case, this case must be decided in the district court in the first instance. But does that case involve the Hobbs Act? Uh, no. It's a different issue, isn't it? Because our problem here, counsel, is if you were bringing this, if the Hobbs Act didn't exist, hey, a whole different ballgame. The Congress, in its wisdom, has decided that it wants to limit the context in which challenges are brought. You can argue, perhaps persuasively, that they really blew it as far as the Endangered Species Act was concerned. They should have factored it in some way, but they didn't. Your Honor, I respectfully, I respectfully, I respectfully disagree. I feel that, uh, what, what this, this case gives this court an opportunity for the first time in the federal court system to review the jurisdictional tension between the ESA and the Communications Act. There has been no case where that issue has ever been addressed. So instead of signing a case law, you want us to create case law? No, I don't, because I think that the case law exists. What this case, what, what, what this court can do in this case is realize that not every action that the FCC takes is an action that falls within the Section 402. Only those actions which are taken by the, taken by an agency action, taken by the FCC, in the exercise of its expertise, on the basis of an administrative record, and relative to their substantive mandate under the Communications Act, is an action within Section 402. Thank you, counsel. Your time has expired. You've consumed all your time. Thank you. We'll hear from the government. May it please the Court, Michael Gray, on behalf of the Federal Communications Commission. Our position is that the District Court lacked jurisdiction because this lawsuit is, at bottom, an attack on the Commission's orders registering the seven communications towers here in Hawaii. You, you treat the licenses as being equivalent to final orders, I trust. The licenses became final orders when no administrative appeal was, was submitted to the full Commission, that's right. I think, I believe it's 30 days. But how is the public supposed to file an appeal when there's no notice? Well, the, the FCC regulations provide that, and this is 47 CFR Section 1.4, provide that in these sorts of cases where there, where there are, there is no public notice that the date runs, the date of, runs from the date of the issuance of the order. And the, the regulations, the counsel has been very careful to say, are not under attack here. So the Court has to assume the facial validity of that regulation and that the plaintiffs would have an opportunity to challenge those licensing decisions. But I would also make the point that that's not the plaintiff's only opportunity to get relief from the, from the Federal Communications Commission in a case like this. In fact, they've availed themselves of the other opportunity, which is to come in after the fact and say, you did not have the appropriate environmental compliance, we want you to consult. They can file a petition with the agency to consult under the Endangered Species Act, and then the agency can go through, develop a record, decide whether to consult, and that's the process that is ongoing right now. What kind of standing is necessary for a third party to what the FCC, all the FCC requires is that if any interested party comes in and says you haven't, that's in the regulations, if you haven't, the FCC hasn't complied. In other words, what you, if I understand you correctly, you're saying that even today, these plaintiffs could come to the FCC, file such a petition, and then raise all of the issues involving consultation? That's right. Yes, Your Honor. They're not barred? There's no time limit? There's no time limit for that second procedure? That's correct, Your Honor. Now, I've been trying to understand why there's a barrier to suit against the FCC in a matter which arguably involves a license or final order, and there presumably is no barrier in, for example, a FOIA suit. If I wanted to get the Freedom of Information Act, I could sue directly once I made my administrative request. I could go directly to the district court, could I not? That's what this court decided, I think, or, well, assumed, anyway, in the, in the Dabronski v. FCC case, and the plaintiffs also had a district court case called K. And one of the things you have to, the difference is on a FOIA challenge, what the Communications Act says is a proceeding to enjoin, set aside, you know, annul, suspend, an order that's under this chapter. So a FOIA proceeding, you know, where they have information, documents that, you know, any order that would come out of that denying a FOIA request, that's not proceeding under the Communications Act, whereas this attack is directly to the district court. And so, you know, this court has said, in, for example, the California Save Our Streams case, and the Northwestern Resources Information Center case, that jurisdiction doesn't turn in, on the substantive infirmity alleged when you're attacking, directly attacking an order of the, of an, of an agency. So what you're saying is that there are certain instances in which the FCC could properly be sued in federal district court, but there are certain categories of claims that are subject to these other FCC statutes which place any judicial review in the Court of Appeals following the end of a proceeding which culminated in an order. Is that right? Right. Any judicial review over an order that's issued pursuant to the Communications Act. That's right. And what I'm saying is that the cases like Dabrowski that deal with Freedom of Information Act claims are not dealing with orders issued pursuant to the Communications Act. No, no, but the usual, you know, getting back to this issue of is there a final order here, you know, the usual definition of final order is one, that there's some kind of proceeding in the sense that, you know, people have noticed, either a rule or an adjudicated proceedings, people get noticed that there's going on, they get a chance, you know, maybe even to participate, and certainly they get then a chance to file a petition. Two, there's some kind of record for, you know, for the court to review. In this case, if they had filed a petition under the Hobbs Act, there's no record at all, is there? It's sort of like, you know, my getting a license for my car. They send an application, I get the license plate, I put it on my car. That's all they do here, right? They get a number and, you know, an extensible number on the car, right? Well, isn't that the entirety of the proceeding? It depends. Well, is there something more to it? Well, there can be, and let me explain. On these seven towers, there were not, but there's no record, there's no proceeding. I understand on these seven towers that those orders, that's right, there's no proceeding, and the orders have become final. What is there to review? Well, I think if we, I think if the petition for review had been filed in the Ninth Circuit originally, directly from those orders, that we would have a good defense that the orders had not been challenged. Now, had, for example, the plaintiffs come in and challenged the orders and filed an application for review by the full commission, then an administrative record would be created on the application for review. Now, would they have had to intervene, so to speak, in the licensing proceeding? They would claim that they are a party who is aggrieved by the tower licensing and file an order or file an application for review by the full commission there. The question is, is it focused specifically on a tower-by-tower basis, or can you come in totally unrelated to licensing of the towers? I think that what I'm talking about would be focused on a tower-by-tower basis. And they can't come in there because it's a secret proceeding. I'm not using that pejoratively, but nobody knows about it except the applicant and the commission. Again, it depends. There are two things that could happen here, right? If the applicant files a statement, the form 854, if he checks no on the environmental review, that no environmental review is necessary, he represents that this won't affect... And they always do that. Well, they may or may not always do that, but if the applicant were to check yes that there is environmental review, then he would have to submit an environmental assessment. There would be notice of that. But in all these cases, they would all check no. That's correct, but I would point out that in the Harrison v. PPG Industries case, which is a U.S. Supreme Court case at footnote four, the court rejects just this sort of case-by-case analysis on an administrative record. The point is that the proceedings could result in a well-developed administrative record, and for jurisdictional purposes for this court, that resolves the issue. It doesn't matter that in this particular case, the proceedings did not result in a record. And I would also point out that, again, there is a second way that a record can be created in this case, and that is currently underway. And the court will have jurisdiction over to review that order once that process is completed. Where is this? This is the petition that they filed for National Environmental Policy Act compliance that also includes, also talks about... Is this at Gulf Coast? No, no, this is, no, this is in this case. They also filed the petition asking us to go ahead and consult with the Fish and Wildlife Service. And as you, the letter that was filed from the Fish and Wildlife Service, you know, we've, this is how it played out. We contacted the applicants and said, you know, we have a notice to sue, they want us to consult, we need more information. We also contacted the Fish and Wildlife Service and said we want information on what endangered species are present in the area. Is this a pending proceeding as such? That's correct. Describe what it is that's going on, because this is, this doesn't seem to have been addressed here. Well, no, it, we do address this in the, we do address this in in the factual statement of our brief. And, and what's going on is, is that was the beginning of the process that I just described. And so the, the applicants prepared biological assessments. Let me, I'm sorry, I'm still stuck on the nature of this administrative entity. Is it a proceeding? Is it a demand? Is it an appeal? What, what is it within the FCC? Maybe you should give me the case number, maybe that would help. Well, I don't know that I have the case number with me, but it's a proceeding pursuant to the 47 CFR, I think it's 1.307. 1.307. I'm not sure if I've got that exactly right, but I, I think that that's, that's the regulatory provision on which they filed. And their petition is located in the let's see, in the administrative record, or in the excerpts of record at, I believe it's at 94. Now, was that proceeding triggered by the lawsuit in this case? That's the D.C. one, I'm sorry. Though they filed a separate petition, that was the D.C. Notice, right? They did also file the notice, yes. Okay, but let's focus on this. This proceeding that you're talking about that is ongoing was triggered how? What, what is it that set that proceeding in motion? They filed a petition for National Environmental Policy Act compliance with respect to these, these towers. And separate from the D.C. action? That's correct. And separate from the action that we're talking about in this case? Or is it, is it, is it wrapped up? I mean that, it's wrapped up, I mean it's the same, it relates to these, it related to 13 towers originally. They came back and said for four towers that there's no, there are no endangered species present for that right now. So it's, it's the same seven, seven towers. And we, our point is that that proceeding will result in an, in an order that can then be resolved. So the, and that's what the... Could that proceeding be expanded to raise the issue of consultation with the environmental agencies? No, that's what it is. That's the, the 28-day letter that they submitted was from the Fish and Wildlife Service. That was part of the outcome of, of this process. The Fish and Wildlife Service, you know, said you've submitted biological assessments to us claiming there will be, you know, no impact. We think there will be impact and you need to cons, you need to consult. And it's related to these seven towers. So the next step would be for the Commission to decide whether or not, whether or not to consult. And that decision has not been made. That's correct. The Fish and Wildlife Service is sending within March and the NCC is still deciding. Speaking hypothetically, in that proceeding, under that petition, if the Commission says, no, we decline to consult, at that point, is that a final order that can, can be... It is. That's the... Picked up in a petition for review? Yes, that's the California Sport Fishing case, uh, from this court, the FERC case. How would it come to this court, directly? Directly to this court. Yes, that's a, that's, that's precisely the facts in the California Sport Fishing case, where California Sport Fishing came in, petitioned the agency to consult. Uh, FERC is a FERC case. FERC said, no, we will not consult. And then, uh... All right. On the other hand, the petition could say, all right, we should consult and initiate the consultation process. That's right. In the end, of that process, there'll be a biological opinion. Yes. And then, which is some, some recommendation, right, of the FWC as to, you know, some kind of, what do you call those actions that should be taken? Yeah. Whatever they're called. There's a term to work with. They, they, well, they can issue an independent, uh, an incident, take statement, you know, allowing certain things under certain conditions. Yes. Or they might recommend, you know, certain modifications. Right. They might recommend, for example, in this case, they might say, you need to rearrange the way guy wires are arranged on the towers or the lighting. Yeah. All right. And then, it's up to the commission to decide what to do in response to that recommendation. That, that's correct, Your Honor. And then, when the commission decides what to do or not to do, it'll, it'll be a final order. That's right. And, and, and also, substantive challenges to the biological, biological opinion are reviewable in this court, um, directly on petition for review. That's the Defenders of Wildlife case, um, that all of the, the Supreme Court vacated on the merits, the jurisdictional determination, and the court didn't, uh, disturb that. So, it's the same exact case. Also, the City of Tacoma v. Fert case in the D.C. Circuit has the same circumstances. Counsel, I want to approach a slightly different issue. Um, the Hobbs Act seems to contemplate that, in this particular action, that we are not necessarily just stuck with the record that we have. Do you agree with that? Can we help create a record by, say, appointing a special master or somebody like that to help create a record? That, that would be, the court would have that available to it. The other thing that the court would have available to it that the, the Supreme Court in the D.C. Circuit has, has said is an appropriate remedy is simply, the record's inadequate, you remand to the agency and say, we need a better record. But, also, appoint a special master. Um, there's also a provision in the Hobbs Act. Can we send it to the D.C.? I mean, to the District Court. There's also a provision in the Hobbs Act that we discuss in our brief that says you can send these matters, uh, refer it to the District Court, yes. So, basically, what, what, what, uh, Mr. Shugman and, and, and A.B.C. are asking for is something, it sounds like, that the FCC, if, if we ordered that, uh, would, under the Hobbs Act, would that be fulfilled? I'm not sure I, I'm not sure I understand the, the question. If the court were to order... They're looking, they're looking for the ESA issue to be resolved in the District Court. They want findings, they want the parties to come in and to litigate the issue. Right. Under the Hobbs Act, we have jurisdiction, arguably, if these folks are agreed parties. We have jurisdiction. Uh, the District Court doesn't have jurisdiction, but I think you incurred that we have the ability to augment the record if the record is inadequate. I've asked you some ways in which that can be done. Talked about a, some kind of a master, the FCC itself, and then I just asked you, could we send it back to the District Court? Could have it do the fact finding? And that's, let's get to that. Do you agree that that could happen? That could happen, but again, jurisdiction lies in this court. I understand that. That's a decision for this court to make once, uh, on, on the facts of the case, once a petition for review is filed in this court. It's, it's not something that the plaintiffs can simply say, there's no record, therefore we go to the District Court. I understand, but if we look at the record, I mean, Judge Tashima started, uh, early in this pointing out the, what I think anybody look at this record could agree with, there's virtually no record here. So there's really nothing upon which we can decide other than pure legal question. So if we decided to augment the record, I gather you're saying we have the full, as long as we're retaining jurisdiction and these folks are, uh, the special master, the District Court or whatever, are acting under our auspices, we can create, uh, fact finders, if you will, that we could then review. Is that correct? I believe that is correct. Yes. I don't think that it would be necessary in this case because the orders, again, the orders that are actually, um, that the, the registration orders themselves, right, those became final, um, under the Hobbs Act, there were 60 days to appeal from those, so there would be no appeal from those orders. The other process that I've described that's ongoing, there will be a robust administrative record with that based on, uh, that's on the, that's on the, what, the colloquy that you were discussing, right? Yes. Yes, that's, that's correct, and so my only point is that I don't think it would be necessary in this case if the court, if they were to file a petition for review from a final order, I don't think it would be necessary for the court to create a fact finder, although it would have that option. Let me ask you a question. This is, this is just out of curiosity. In most, uh, FTC cases, the FTC is, uh, represented by somebody from the General Counsel, right? Yes. But in this case, you're with the GOG, right? Yes, yes. With the Environmental, uh, Environment and Natural Resources Division, yes. Which, which to me sort of tells me, well, this is not really an FCC case, this is an environmental case, but is that the way the Department must have looked at it? No, what, what it tells you is that this is not, um, that they've not properly challenged an order, right? If it, the FCC has independent litigation authority, um, so if you, when you challenge an FTC, you file a petition for review in the Court of Appeals, the FCC has their own lawyers that take it. But, uh, when they, for the, at the initial step, when they file their, their lawsuit in the District Court and claim, raise the essay claims, that kicks us, it kicks it into justice. And then we take the position that, in fact, we're not supposed to be here, right? They're supposed to go get a final order, go to the Court of Appeals. This is not proper in the District Court. So that's, that's how we end up with me here, rather than an FCC lawyer. So it's just the internal rules of the DOJ? Yeah, I believe that's right. One other question. I know that you had sort of stipulated that this was the case, but I'm puzzled as to why the DOJ takes the position that these folks are three-partied. Earnest and passionate they are, but they did not challenge, within an early time framework, the licenses. And it is the, it is the licenses, the effect of failing to consult with the Fish and Water and Fish and Wildlife Service, that is the gravamen of the complaint here. But how in are they agreed parties under the Hofstede? Well, the FCC regulations provide an opportunity for parties to come in and raise environmental compliance, and they don't have to be, they don't have to be part of the initial process, and there's not a time limit on that review. Is this under 47 CFR 1307? Yeah, yes. And so, so that, that is why, that's why we haven't, haven't challenged that here. Thank you. Thank you. Thank you, counsel. Before submitting the case, I would just like to say, I'm sure, on behalf of my colleagues, that we appreciate the very fine work done by counsel on both sides, which are, which has been very, very helpful to the panel in trying to deal with this case. Thank you very much. The case just argued will be submitted for decision, and the court will adjourn. All rise. We'll now depart for this session and adjourn. Thank you.
judges: O'scannlain, Tashima, Smith